UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Nicholas E. Alahverdian,**

   *Plaintiff,*

v.               Case No. 3:15-cv-060
                  Judge Thomas M. Rose

**Christopher Nemelka,**

   *Defendant.*

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** (DOC. 13)**.**

---

  Plaintiff Nicholas Alahverdian filed a complaint against Defendant Christopher Nemelka for libel, intentional infliction of emotional distress, telecommunications harassment, identity fraud, and defamation *per se*. (Doc. 7). Pending before the Court is Defendant's Motion to Dismiss these respective claims. (Doc. 13). Therein, Defendant requests that the Court dismiss Plaintiff's claims for lack of personal jurisdiction and/or for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b). (*Id.* at 1). Because Ohio's Long Arm statute confers jurisdiction, and because the Plaintiff has presented sufficient facts to support his asserted claims, the Court will deny Defendant's Motion to Dismiss.

1

**I.     Background**[1]

Plaintiff is the author of a blog, which can be found at http://nicholasblog.com. (Doc. 7, ¶ 7).  On this blog, Plaintiff writes about sports, politics, news, and other topics of interest. (*Id.*).  As a member of the Church of Jesus Christ of Latter-day Saints, Plaintiff became interested in an international news story surrounding an individual facing excommunication who was publicly speaking out against the Church. (*Id.* at ¶ 8).   Plaintiff decided to write about his interpretation of this topic on his blog on January 15, 2015. (*Id.*).

On January 20, 2015, without any solicitation from Plaintiff, Professor Dr. Daniel Peterson from Brigham Young University posted a link to the Plaintiff's blog, which caused an increase in traffic to Plaintiff's website. (*Id.* at ¶¶ 9, 10).  The blog post read:  "I've come across a really interesting and attractively designed Mormon-oriented blog by Nicholas Alahverdian that I want to call to your attention:   http://www.nicholasblog.com. May there be more such blogs by faithful members of the Church!" (*Id.* at ¶ 9).

Later, Dr. Peterson posted another link to an updated article written by Plaintiff about the individual facing excommunication, which went viral and within hours Plaintiff had tens of thousands of website visits. (*Id.* at ¶ 12).  Following that post, those with their own opinions began to comment on various forum websites and message boards that Plaintiff was an employee of the Church and had previously been convicted of a misdemeanor by a municipal court in Ohio. (*Id.* at ¶ 13).  Plaintiff then started receiving phone calls, emails, texts and comments that were distasteful and occasionally threatening in nature. (*Id.* at ¶ 14).

---

[1] When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (2009).

2

On February 9, 2015, Plaintiff received a tweet from an individual that Plaintiff had never previously spoken with, that read: "@nalahverdian either someone is impersonating you and sending out vile emails, or you are sending them out. I thought I'd check with you 1st." (*Id.* at ¶ 15). Plaintiff responded to this individual and asked him to send him a copy of the email that he had received, and this is what was transmitted:

> My beloved brothers and sisters,
> I'm Nicholas Alahverdian and Public Relations Specialist of the Mormon Church. (https:www.linkedin.com/in/nicholasalahverdian)
> I'm a registered sex offender. (http:www.icrimewatch.net/offenderdetails.php?OfndrID=1552338&AgencyID=55149&x=839f2662-973a-47e1-9789-c13c527c9f24)
> I'm a Mormon. (http://mormon.org/me/8QBR/NicholasAlahverdian)
>
> I bear my testimony that I know with every fiber of my exposed woody, that the Book of Mormon is blue and I testify to you that I'm not the only true and living sex offender in the church!!
> I hold on to my iron rod every day. Now even stronger than ever before! The sisters in church will testify! I love the prophet Joe Smith and his 40 wife's. He is my example and redeemer.
>
> Since I was a young boy I've been a fan of nature. I enjoy the smell of morning wood in my bedroom. Sometimes I even went out in woods and I pitched a tent all by myself. In 2008 however I got caught chokin' a chicken on a public playground with my buffed banana exposed.
> While I was in prison I learned from my good friend Poyd G. Cracker, that the exposure of my willy is a deathly sin and I would only receive forgiveness by the blood atonement. I knew he was telling the truth and i was willing to obey him. So he anointed my willy with oil from his little factory. Then he drew a flaming sword and destroyed my willy eternally. I felt no pain at all, because I had burning in my pants that overwhelmed me.
> I knew from this moment on I will serve the Lord for the rest of my life and I will destroy everyone within the righteous way of Mormonism.
> I testify that fighting the purple helmet warrior will turn you into a faggot like me! Stay away from the one-eyed snake!

> I rebuke everyone who is rubbing one out by the power of my neverlasting Priesthood. At the last day I will testify against you joystick player and the Lord will exalt me into Hagops barber shop. (Please look up my self made Wikipedia page for more information.)
>
> In the name of our mighty Joseph!
> Your eunuch brother Nicholas Edward Alahverdian
> (sexy ladies add me on tinder)

(*Id.*). Plaintiff also received this email upon checking his inbox. (*Id.* at ¶ 16). Internet users began commenting and tweeting about receiving a disgusting email from the Plaintiff. (*Id.*).

Plaintiff then received an additional email from alahverdian@hush.com stating the following:

> Call me if you have a problem with my honest e-mail. My number is 617-453-xxxx
> Also follow me on twitter https://twitter.com/nalahverdian
> May the mighty Joseph destroy every single unbeliever with my iron rod!
> I'm so horny right now baby.
>
> Please not forget, I'm a sex offender so call me sexy ladies 617-453-xxxx
>
> All you haters stay away with your small dicks.
>
> http://www.mydaytondailynews.com/news/news/former-sinclair-students-suit-alleges-sex-case-mius/nXN9b/

(Id. at ¶ 17). Upon receipt, Plaintiff immediately contacted his attorney, law enforcement, and his LDS priesthood leaders. (*Id.* at ¶ 18). Through their investigation, it was discovered that Defendant Christopher Nemelka resides at 224 and/or 244 West Garden Park Drive in Orem, Utah and professes that he translated the sealed portion of the Book of Mormon and is the reincarnation of Hyrum Smith, a 19th Century religious leader and brother of the first president of the LDS Church, Joseph Smith. (*Id.* at ¶¶ 3, 18). The Orem, Utah Police Department informed the Plaintiff

4

that Defendant is known to law enforcement, is psychologically unstable, and has done this to people before. (*Id.* at ¶¶ 19, 26).

Plaintiff alleges that he discovered at chrisnemelka.com many internet and "real life" identities of Defendant. (*Id.* at ¶ 23). While researching Nemelka's "a Marvelous Work and a Wonder" entity, Plaintiff alleges he learned that another email from Defendant himself was sent in the past using a hush.com account, which was also documented at chrisnemelka.com. (*Id.* at ¶ 20, 22). In addition, Defendant's name and website (marvelousworkandwonder.com) were included in the "CC" entry field in the emails pertaining to the instant case and other cases. (*Id.* at ¶ 20).

It was revealed that this email was allegedly sent to a large number of internet users multiple times per day for several consecutive days. (*Id.* at ¶¶ 16, 22). Plaintiff also alleges that the "hush.com" email service provides the ability to encrypt one's email address. (*Id.* at ¶ 16). Plaintiff discovered that his name had been added to the identity theft page (it reads "Nick Alaverdian: Hushmail (Sent "Diary of a Player" type of obscene email to Legion email) (sic)." (*Id.* at ¶ 23). Plaintiff does not allege that he ever contacted anyone from hush.com, but does allege that he was informed that the email was being discussed around the internet because of its shocking contents and Plaintiff being the alleged sender. (*Id.* at ¶ 24).

Plaintiff alleges that the emails, and different versions thereof, continue to be sent and posted around the world-wide web, making recipients believe that the Plaintiff is sending the email. (*Id.* at ¶ 27). As a result, Plaintiff has experienced harassment and abuse, including bullying, defamation, threats, etc. (*Id.* at ¶ 21). The harassment and abuse are alleged to be exacerbated by the fact that the fictitious email continues to be illicitly propagated by several ex-Mormon and anti-Mormon internet users as being sent by the Plaintiff. (*Id.*). Plaintiff alleges

that Defendant maliciously sent these emails to countless individuals intentionally causing Plaintiff emotional distress. (*Id.* at ¶¶, 27, 28). Plaintiff further alleges that the actions of Defendant caused Plaintiff immediate and irreparable damage by portraying Plaintiff via publication and republication as one who is delusional, sexually deviant, insane and is willing to "destroy everyone within the righteous way of Mormonism" and "every single unbeliever [of Mormonism]." (*Id.* at ¶ 28). Thus, Defendant allegedly implied that Plaintiff is unfit to conduct his business and responsibilities in both the secular and spiritual spheres of society. (*Id.* at 29).

## II.     Lack of Personal Jurisdiction – 12(b)(2)

### A.     Legal Standard

When confronted with a Rule 12(b)(2) motion, "[t]he plaintiff bears the burden of establishing the existence of jurisdiction." *Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006). If, however, the Court resolves a Rule 12(b)(2) motion relying solely on "written submissions and affidavits…rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is relatively slight, and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prod. and Controls, Inc. v. Safetech Int'l, Inc.,* 501 F.3d 544, 549 (6th Cir. 2007) quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (internal citation omitted). Under such circumstances "the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Id.* quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

### B.     Analysis

In Ohio, "personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012). Thus, "if jurisdiction is not proper under Ohio's long-arm statute there is no need to perform a Due Process analysis because jurisdiction over the defendant cannot be found." *Id*. at 713. It has frequently been stated that Ohio's long-arm statute, unlike other jurisdictions, does not reach to the limits of the Federal Due Process Clause. *Id.* As a result, "the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Id.* at 712-13. Though, in light of the recent Supreme Court case of *Walden*, the outer reaches of the Federal Due Process Clause in the personal jurisdiction context have arguably changed. *Walden v. Fiore*, 134 S. Ct. 1115, (2014).

**1.  Ohio's Long-Arm Statute**

Pursuant to Ohio's long-arm statute, the courts have "personal jurisdiction over a non-resident [defendant] if his conduct falls within the nine bases for jurisdiction listed by the statute." *Id.* Under the statute, one of the bases for jurisdiction include:

> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when [defendant] might reasonably have expected that some person would be injured thereby in [the forum] state…

O.R.C. 2307.382(A)(6).

Here, Defendant, a Utah resident, allegedly caused tortious injury to Plaintiff in Ohio by sending emails from outside of Ohio to an unknown number of internet users world-wide. The emails concerned the activities of Plaintiff, an Ohio resident, stating that Plaintiff was a registered sex offender and portraying Plaintiff as an individual who was delusional, sexually deviant, insane and willing to "destroy everyone within the righteous way of Mormonism" and "every single

7

unbeliever [of Mormonism]." (Doc. 7, ¶¶ 15, 28).  Shortly after this email was sent, internet users began commenting and tweeting about receiving a disgusting email from Plaintiff. (*Id.* at ¶ 16).  A link to the Ohio sex offender website was also provided, which contained Plaintiff's full name, known aliases, and home address, located in Montgomery County, Ohio. (*Id.* at ¶ 15)  By including the ink to the Ohio sex offender website, it is alleged that Defendant knew Plaintiff resided in Ohio, and thus acted with the purpose of injuring Plaintiff in Ohio. (Doc. 15 at 5).  As a member of the Church of Jesus Christ of Latter-day Saints, and as someone having a presence on the internet in connection with the Church, these public declarations were harmful to Plaintiff. (Doc. 7, ¶¶ 8, 29).  Defendant could reasonably expect that Plaintiff would feel the harm of that injury in Ohio, where he resides and conducts his business.  Thus, based on the foregoing, Defendant falls within the reach of Ohio's long-arm statute.

**2.  Due Process**

A finding that the Ohio long-arm statute requirements have been met does not end the inquiry. *Conn*, 667 F.3d at 712.  In addition to the State's long-arm statute, under the U.S. Constitution "the Due Process Clause requires that the defendant have sufficient minimum contacts with the forum state so that finding personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.*  As Plaintiff points out, "[t]here are two kinds of personal jurisdiction within the Federal Due Process inquiry:  (1) general personal jurisdiction, where the suit does not arise from defendant's contact with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Id.* at 712-13.  Because Plaintiff's claims arise out of or are related to Defendant's contact with Ohio,

8

the question is whether Federal Due Process allows the imposition of specific jurisdiction over the foreign defendant in these circumstances.

The Sixth Circuit has established that a finding of specific jurisdiction pursuant to the Due Process Clause requires three elements: "(1) the defendant must purposefully avail himself of [the privilege] of acting or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts [of the defendant] or consequences [caused by the defendant] must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.*

The first element of the Sixth Circuit test, purposeful availment, "exists where the defendant's contacts with the forum state 'proximately result from actions by the defendant himself that create a substantial connection with the forum,' and are such that he 'should reasonably anticipate being [hauled] into court there.'" *Rice v. Karsch*, 154 Fed. Appx. 454, 459 (6th Cir. 2005) (internal citation omitted). The purpose of this requirement is to ensure that "a defendant will not be subject to the jurisdiction of a forum solely as a result of 'random, fortuitous, or attenuated contacts.'" *Id.* quoting *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475 (1985). Defendant's alleged contacts with the forum State were not random, fortuitous, or attenuated. This was not an electronic communication that was accidentally sent to a wide-range of people containing innocent information harmless to Plaintiff. Instead, these emails contained information that targeted Plaintiff and were intentionally sent to a large number of internet users multiple times per day for several consecutive days. (*Id.* at ¶¶ 16, 22). Specifically, information regarding an Ohio court conviction, an Ohio sex offender registry, and a Dayton Daily News link evince an awareness on the part of the sender that the electronic communications were likely to

9

cause harm in Ohio, removing Defendant's alleged contacts with Ohio from the realm of the random, fortuitous, and attenuated. (Doc. 7, ¶¶ 15, 17). These emails and alleged actions by the Defendant himself created the substantial connection with the forum. Therefore, the Defendant's contacts with the Plaintiff in the forum State are sufficient to constitute purposeful availment to satisfy the first element of the above test.

The second element, the cause of action arising from a defendant's activities in the forum state, according to a recent Supreme Court case, "must arise out of the contacts that the 'defendant *himself* creates with the forum State.'" *Walden*, 134 S. Ct. at 1122 quoting *Burger King*, 471 U.S. at 475. In *Walden*, residents of Nevada and California brought suit in the United States District Court for the District of Nevada against a Georgia police officer. *Id.* at 1119-20. At the time of the alleged tort, the defendant was working at the Atlanta Hartsfield-Jackson Airport as a deputized agent of the Drug Enforcement Administration ("DEA"). *Id.* at 1119. As a part of his duties on the task force, defendant conducted periodic investigative stops in support of the DEA's airport drug interdiction program. *Id.* During one of these routine stops, defendant searched the plaintiffs and unlawfully seized a large amount of cash. *Id.* Following the seizure, defendant allegedly helped draft a false probable cause affidavit in support of the forfeiture and forwarded it to the United States Attorney's Office in Georgia. *Id.* Ultimately, a forfeiture complaint was not filed, and the DEA returned the funds to plaintiffs. *Id.* at 1120.

The Supreme Court had to decide whether a court in Nevada had personal jurisdiction over a foreign defendant in a tort suit "on the basis that he knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada." *Id.* at 1119. The Court held that jurisdiction in Nevada was improper under the circumstances. *Id.* The Court

10

reasoned that the 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122.  In discussing *Calder*, the Court stated that "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 1125.  The Court went on to say, however, that "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.*

In *Walden*, the Court reiterated that the inquiry as to whether a forum State has specific jurisdiction over a foreign defendant "'focuses on the relationship among the defendant, the forum, and the litigation.'" *Id.* (internal citation omitted).  In other words, "however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980).  Based on this analysis, "the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*  Thus, according to the facts, the court in Nevada did not have jurisdiction over the foreign defendant because the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 1124.

This case is distinguishable from Walden.  In *Walden*, the causes of action were brought in Nevada even though the interaction and contact among the parties took place in Georgia. When the defendant encountered plaintiffs in Georgia, he was not going out of his way to single the plaintiffs out, intentionally harm them, or form a contact with Nevada, rather, he was simply doing his job.  As a result, the only connection the defendant had with Nevada was his link to the plaintiffs who resided there and the argument for jurisdiction rested solely on the plaintiffs'

11

residency, not the actions of the defendant. This did not sufficiently connect the defendant to Nevada for purposes of jurisdiction.

In this case, even though Plaintiff resides in Ohio, similar to *Walden*, Defendant alleges that he has not had any significant contact with the forum State. (Doc. 13 at 2). While that may be true, the contact Defendant allegedly had with the forum State, and the only contact that truly matters, stems from the emails allegedly sent by Defendant directed at Plaintiff that form the basis for the Complaint. (Doc 7, ¶¶ 15, 17). As in *Walden,* the Complaint was brought in a different state than where the contact originated. (*Id.*). Unlike *Walden*, however, Defendant's alleged deliberate actions sufficiently connect him to Ohio. Defendant was supposedly going out of his way to single Plaintiff out, intentionally harm him, and form a contact with Ohio through his directed actions. (*Id.*).

The emails allegedly sent by Defendant portray Plaintiff as a delusional, sexually deviant, and an insane person. (*Id.* at ¶¶ 15, 28). Anyone who sends such an email intends harm to the person described. Prior to the emails being sent, Plaintiff only experienced an increase in traffic to his website due to a recent blog post, encountered people voicing their opinions on various forum websites and message boards about Plaintiff, and only occasionally received phone calls, emails, texts and comments that were distasteful and sometimes threatening in nature. (*Id.* at ¶¶ 9, 13-14). Since the circulation of the aforementioned emails, however, Plaintiff has allegedly suffered immediate and irreparable damage with some even implying that the Plaintiff is unfit to conduct his business and responsibilities in Ohio, both in the secular and spiritual spheres of society. (*Id.* at ¶¶ 28, 29). It is because these emails were sent that Plaintiff has experienced harassment, abuse, bullying, defamation, threats, etc. (*Id.* at ¶21). This harassment and abuse,

12

according to the Plaintiff, seem to be exacerbated by the fact that the fictitious email continues to be illicitly propagated by several ex-Mormon and anti-Mormon internet users as being sent by the Plaintiff. (*Id.*) The emails, which allegedly continue to be sent and posted around the world-wide web, have been discussed around the internet because of their shocking contents and Plaintiff being the alleged sender. (*Id.* at ¶¶ 24, 27).

Therefore, although Defendant may have never traveled to Ohio, nor has he previously conducted activities within Ohio, it is alleged that Defendant sent electronic communications to various internet users world-wide causing harm to Plaintiff whom Defendant knew to reside in Ohio. Additionally, as mentioned above, although mere injury is not a sufficient connection with the forum State, this injury suffices since the Defendant in this case, unlike the one in *Walden,* formed and initiated the contact with the forum State himself.

Furthermore, the Sixth Circuit has held that "'[m]aking phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action.'" *Rice,* 154 Fed. Appx. at 460 quoting *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001). Similar to making phone calls or sending facsimiles, sending emails into the forum intended to harm a specific person located in that forum is sufficient to confer jurisdiction over a foreign defendant where the emails form the basis for the action. Thus, this level of causation is sufficient to satisfy the second element.

If the first and second elements are satisfied, there exists a presumption that the exercise of personal jurisdiction over a defendant is reasonable so as to satisfy the third element. *Theunissen v. Matthews*, 935 F.2d 1454, 1462 (6th Cir. 1991). To rebut this presumption, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction

13

unreasonable." *Burger King*, 471 U.S. at 477. A court must balance, among other things, "'the burden on a defendant, the forum State's interest in adjudicating the dispute, [and] the plaintiff's interest in obtaining convenient and effective relief…'" *Conn*, 667 F.3d at 718. Minimum contacts with the forum State combined with the interests of a plaintiff and the forum may "justify even serious burdens placed on a non-resident defendant." *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 165 (S.D. Ohio 2012). The exercise of personal jurisdiction over a defendant is presumed reasonable in this case since the first and second elements are satisfied. Defendant has put forward no arguments and has made no attempt to rebut this presumption. Thus, based on Defendant's minimum contacts with the forum State combined with the interests of Plaintiff and the forum, personal jurisdiction in this case is justified and Defendant's right to due process is not infringed upon in this case.

In addition, the alternative, to force Plaintiff to file suit in a court in Utah, would not be any more reasonable in this case. Rather, it would place the same burdens, if not additional burdens, on the Plaintiff as this case in Ohio places on the Defendant. The difference, however, is Plaintiff arguably did not act in any way to bring this upon himself. Instead, Defendant allegedly directed his activity towards Plaintiff in Ohio to harm Plaintiff in Ohio. Thus, even if all there is here is a Defendant broadcasting things to the world about Plaintiff, it is more than what Utah would have under these circumstances.

Therefore, since the Ohio long-arm statute confers jurisdiction, and Federal Due Process concerns do not defeat jurisdiction, this court denies Defendant's Rule 12(b)(2) motion.

**III.     Failure to State a Claim – 12(b)(6)**

**A.      Legal Standard**

To conclude that a plaintiff has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M&G Polymers, USA, LLC,* 561 F.3d 478, 488 (2009). Though, a court need not accept as true the legal assertions of the plaintiff. *Id.* Instead, in order "to survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Id.* quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569, 545, 555 (2007). In addition to the complaint, a court "must consider…other sources…in particular, documents incorporated into the complaint by reference…." *Tellabs, Inc. v. Makor Issues & Rights, Ltd,* 551 U.S. 308, 322-23 (2007).

**B.     Analysis**

A claim will be dismissed when it does not "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (citation omitted). Still, a court is not required to accept "legal conclusions" or "conclusory statements" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, a complaint "should be dismissed for failure to state a claim only where 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1189 (6th Cir. 1996) quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Here, Plaintiff alleges that Defendant sent an email to various internet users on the world-wide web impersonating Plaintiff. (Doc. 7, ¶ 30). Plaintiff states that he received a tweet

15

from an individual he had never spoken with before that read "@nalahverdian either someone is impersonating you and sending out emails, or you are sending them out. I thought I'd check with you 1st." (*Id.* at ¶ 15). Plaintiff alleges that Defendant was the one who maliciously sent these emails intentionally causing Plaintiff emotional distress. (*Id.* at ¶¶ 27, 28). Plaintiff further alleges Defendant knew where Plaintiff was located, and thus intentionally directed these communications to Ohio, by including a link to the Ohio sex offender registry webpage containing Plaintiff's home address. (Doc. 15 at 5). Plaintiff then claims that the Orem, Utah police made statements that the Defendant is known to law enforcement, is psychologically unstable, and has done this to people in the past. (Doc. 7, ¶¶ 19, 26). Plaintiff avers that the Defendant's name and website were included in the "CC" entry field in the emails pertaining to the instant case and other cases. (*Id.* at ¶ 20). In addition, Plaintiff claims that another email from Defendant himself was sent in the past using a hush.com account, which is the same provider used to send emails impersonating Plaintiff. (*Id.* at ¶¶ 15, 22). Also, Plaintiff later discovered that his name was added to the identity theft page. (Id at ¶ 23).

In viewing the complaint in the light most favorable to the Plaintiff, and by taking all well-pleaded factual allegations as true, the allegations in the complaint rise above the level of mere speculation. Also, the complaint contains either direct or inferential allegations respecting all of the material elements necessary to sustain recovery by including the libelous email, the identity of the Defendant, and the facts and information that support the Plaintiff's theory. Defendant, on the other hand, points to no particular element of any of the 5 causes of action and claims that it is missing. Therefore, based on the foregoing, Defendant's 12(b)(6) motion is also denied.

**IV.     Conclusion**

Because Defendant allegedly inflicted harm on an Ohio resident, from outside of Ohio, knowing him to be an Ohio resident, by means of contacts Defendant created with Ohio, Defendant Chris Nemelka's Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) is **DENIED**.  Also, since Plaintiff's claims contain sufficient factual allegations that, if accepted as true, state claims for relief that are plausible on their face, Defendant Chris Nemelka's Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) is also **DENIED**.  In addition, any extraneous information submitted in support of Defendant's Motion to Dismiss that was not addressed in this Order is struck from the record.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, August 21, 2015. 2

                                                                    s/Thomas M. Rose
                                                        _____
                                                                  THOMAS M. ROSE
                                                        UNITED STATES DISTRICT JUDGE

---

2  The Court acknowledges the assistance of judicial extern Jacquelyn McTigue in the preparation of this order.